[Civ. No. 49630. First Dist., Div. One. May 28, 1981.]

RUTH ALICE JONES, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JUDY K. BENNY et al., Real Parties in Interest.

[Civ. No. 50205. First Dist., Div. One. May 28, 1981.]

JUDY K. BENNY, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ELI LILLY & COMPANY et al., Real Parties in Interest.

COUNSEL·

LeRoy Hersh, Wes Wagnon and Hersh & Hersh for Petitioners and for Real Party in Interest Benny.

No appearance for Respondent.

Richard J. Heafey, Peter W. Davis, Judith R. Epstein, Crosby, Heafey, Roach & May, Robert L. Dickson, Roy G. Weatherup, Ralph A. Campillo, Jerry M. Custis and Haight, Dickson, Brown & Bonesteel for other Real Parties in Interest.

OPINION

**GRODIN, J.**—These consolidated writ matters arise out of a confrontation between a litigant's right to discovery and the privacy rights of a person not party to that litigation. Plaintiff in the underlying suit is a woman who claims injury as a result of her mother's ingesting the drug diethylstilbestrol (DES) while plaintiff was *in utero.* Named as defendants are a number of pharmaceutical companies who are alleged to have manufactured and distributed the drug, and against whom plain-

tiff seeks recovery on various grounds including strict products liability, negligence, breach of express and implied warranties, and enterprise liability. (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924].) The issue in *Jones* v. *Superior Court* is whether or to what extent petitioner in that case,[1] who is plaintiff's *mother*, can be compelled to reveal information concerning *her* medical history—information which defendants say is relevant to the preparation of their defense, but which plaintiff's mother claims is protected both by the statutory physician-patient privilege (Evid. Code, § 990 et seq.) and by the federal and state Constitutions. The issue in *Benny* v. *Superior Court* is whether *plaintiff* can be compelled to seek information from her mother, concerning her mother's medical history, in order to respond to interrogatories propounded by defendants.

*Procedural Background*

The issue in *Jones* arose when one of the named defendants, Eli Lilly & Company (Lilly), took petitioner's deposition. She answered questions about her medical history before and up to the time of plaintiff's birth, recounting conversations with her physician, pharmacist, husband, and others regarding her pregnancy and the administration of DES, but she initially refused to give the names of the physicians, pharmacists, and the hospitals she had utilized during her pregnancy, and she refused to answer any questions relating to her medical history after the birth of plaintiff.

Lilly then moved to compel answers, and appended to its motion a copy of an affidavit from Ralph M. Richart, M.D., which had been filed in an apparently similar action against Lilly in New Jersey. Dr. Richart's affidavit, after stating his qualifications in the field of obstetrics, asserts that where a mother took DES, her "entire medical history," and especially her obstetrical and gynecological history, would be "extremely important in determining whether the [DES] she took had any effect on the plaintiff, and whether this pharmaceutical was properly prescribed." According to the affidavit it would be important for these purposes to know, in addition to facts relating to the mother's pregnancy with the plaintiff, whether the mother's history reflects any genetic defects which could cause obstetrical problems; all details sur-

---

[1]We will use the term "petitioner" to refer to Jones throughout this opinion. We will refer to her daughter as "plaintiff," and to the other real parties in interest as "defendants."

rounding her miscarriages and/or abortions; any symptoms presented during subsequent pregnancies and the pharmaceuticals which were prescribed for her.

Petitioner's counsel, in response to the motion to compel answers, represented to the court that petitioner would be willing to respond to questions about her medical history prior to plaintiff's birth, including the names of the doctors, pharmacists, and hospitals, but she continued to resist discovery directed toward the postpartum period on grounds of statutory privilege, constitutional right of privacy, and relevancy.

After hearing on the motion, the trial court ordered petitioner to respond to 14 certified questions, including 11 questions relating to the period prior to plaintiff's birth (which petitioner is apparently willing to answer) and 3 questions relating to the subsequent period. These latter three questions asked: "Who was your obstetrician for [plaintiff's younger brother] Steven?"; "Were all your children born in the same hospital?"; and "You lost one of your twins. Was that at birth?" In addition, respondent court ordered generally that petitioner "answer questions at her deposition regarding her medical history subsequent to the date of birth of plaintiff." These directives were accompanied by a protective order to the effect that the information disclosed was to be used solely for the purposes of the litigation, and was to be disclosed only to the parties, their counsel, and consultants and experts retained by them.

The issue in *Benny* arose when plaintiff responded to interrogatories dealing with her mother's medical history by saying she either did not know the requested information or knew only vague details.[2] The trial court ordered further response, apparently on the ground that she was obligated to seek such information from her mother.

---

[2]Examples of these questions with petitioner's responses are as follows: "7. If your natural mother has undergone illnesses, operations, hospitalizations or institutional confinements during *her lifetime* (italics in original), state for each: a. The nature and circumstance of each said confinement, including dates and places of each. b. The duration, including dates of admission and discharge from any hospital, its name and all convalescent periods. c. A description of the condition for which she was admitted each time, if any. d. A description of the treatment rendered. e. The name and address and relationship to her of all persons who treated or examined her and their address. f. The name and address of all hospitals or institutions involved. g. The nature and extent of any permanent disabilities or residual effects. RESPONSE: a.... a hysterectomy at some hospital in the East Bay Area, the exact place and date unknown; ... b....

Plaintiff and her mother then filed with this court petitions for writ of prohibition or mandate to block enforcement of the respondent court's discovery orders. Considering that the issues raised were of general importance to the trial court and to the profession (see Henderson, *DES Litigation: The Tidal Wave Approaching Shore* (1980) 3 Corp. L.Rev. 143, 148), that useful guidelines might emerge, and that appeal was not an adequate remedy (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186 [23 Cal.Rptr. 375, 373 P.2d 439]; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal. Rptr. 309, 508 P.2d 309]; *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643]), we granted alternative writs of prohibition and a stay of the discovery orders pending our decision. Defendants E. R. Squibb & Sons, Inc., and the Upjohn Company, who seek similar discovery, have, pursuant to stipulation, joined real party in interest Lilly in supporting the trial court's orders.

I.

JONES *v.* SUPERIOR COURT

Jones' petition calls for consideration of both statutory and constitutional principles. We will discuss the applicability of those principles in general terms, and then bring them to focus upon the issues posed by the trial court's order.

*Physician-patient Privilege*

Evidence Code section 994 provides, subject to statutory exceptions, that a "patient, whether or not a party, has a privilege to refuse to dis-

---

Plaintiff does not know who treated her mother concerning the hysterectomy.... g. Unknown to Plaintiff.... 8. State the time, place and circumstances of any medical examination or treatment your natural mother has had by any physician, or by a limited medical practitioner, and as to each physician or each limited medical practitioner, state: a. The name, address and specialty of each. b. Each date of consultation, examination or treatment. c. A description of the condition for which each doctor was seen. d. A description of the treatment rendered. RESPONSE: Plaintiff knows that her mother has been to the doctor on several occasions, does not know whether for examination or treatment nor any other details concerning such visits, except as explained in response to the preceding interrogatory.... 11. State whether your natural mother has ever been afflicted with a mental illness or a nervous disorder. If so, state: a. The name and give a description of each mental illness or nervous disorder. b. The date on which she first became aware of such mental illness or nervous disorder, or the date on which diagnosis had been made by a physician, whichever is applicable, including the name and address of each physician who made a diagnosis. RESPONSE: Not to Plaintiff's knowledge."

close, and to prevent another from disclosing, a confidential communication between patient and physician." █ To the extent that the privilege applies, it operates as a bar to discovery of even relevant information. (Code of Civ. Proc., § 2016, subd. (b).) "[T]here can be no discovery of matter which is privileged." (*Rudnick* v. *Superior Court, supra*, 11 Cal.3d 924, 929.)

█ Defendants assert what amounts to a threshold question concerning the statutory privilege. They rely upon three exceptions to the privilege any of which, if applicable, would mean that petitioner's privilege was automatically eliminated, or at least substantially diminished, by the action of her daughter in instituting this lawsuit and without regard to the nature of petitioner's participation in the litigation. The exceptions to which we refer provide that there is no privilege with respect to communications relevant to an issue concerning the condition of the patient "in a proceeding to recover damages on account of the conduct of the patient if good cause for disclosure of the communication is shown" (Evid. Code, § 999), or where such issue "has been tendered" by either a "party claiming through or under the patient" (Evid. Code, § 996, subd. (b)), or a "party claiming as a beneficiary of the patient through a contract to which the patient is or was a party ..." (Evid. Code, § 996, subd. (c)). We consider each of these provisions in turn.

Prior to 1975, section 999 afforded an exception from the privilege in a proceeding to recover damages "on account of the conduct of the patient *which constitutes a crime.*" The amendment of that year eliminated the emphasized phrase and substituted for it the present language relating to good cause for disclosure. The Law Revision Commission commentary to the amendment characterizes the former "criminal conduct" exception as "burdensome, difficult to administer, and ill designed to achieve the purpose of making needed evidence available." As an example of the section's new scope, the commentary refers to "a personal injury action brought against an employer based on the negligent conduct of his employee who was killed in the accident." Nothing in the legislative history of the amendment, or in its common sense meaning, suggests that it applies to conduct of a patient which is neither criminal nor wrongful in any legal sense, simply because that conduct—in this case the consumption of prescribed drugs—is alleged to constitute the physical medium by which the defendant's tortious act is communicated to the plaintiff. Plaintiff in this case sues, not "on account of the conduct of" her mother, but on account of the conduct of defendants, who

are alleged to have acted wrongfully in relation to her. We conclude that the section 999 exception does not apply.

Similarly, plaintiff by her instant action is not "claiming through or under the patient" within the meaning of subdivision (b) of section 996. That language is derived from rule 27(4) of the Uniform Rules of Evidence, drafted in 1953 ·by the National Conference of Commissioners on Uniform State Laws, and is characterized by the California Law Revision Commission as applying to "a plaintiff in the patient's shoes." (6 Cal. Law Revision Com. Rep. (1964) p. 413.) The example given is an action by a patient "by guardian to set aside a deed by patient or to cancel a contract for want of capacity of the patient to execute the instrument" (*ibid.*). Plaintiff does not stand in her mother's shoes, she stands in her own; and the injuries she complains of are to her own body. Nothing in the legislative history, and no cited authority, supports application of the "through and under" exception here.[3]

Finally, plaintiff cannot reasonably be said to be "claiming as a beneficiary of the patient through a contract to which the patient is or was a party" within the meaning of subdivision (c) of section 996. Though her complaint invokes express and implied warranties, it is well established that an action based upon such theories may be maintained by an injured party against the manufacturer of biologics despite the absence of privity (*Gottsdanker* v. *Cutter Laboratories* (1960) 182 Cal.App.2d 602 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]; *Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424 [79 Cal.Rptr. 369]; 2 Witkin, Summary of Cal. Law (8th ed. 1973) Sales, § 99, p. 1163) and that this "warranty" without privity is not a contractual warranty at all, but really a species of strict tort liability. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 809, p. 3105; see *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

■ While petitioner's statutory privilege may have survived her daughter's filing of this lawsuit, it did not remain unaffected by her own actions in making partial disclosures of privileged communications

---

[3]In support of the applicability of the section 996, subdivision (b) exception, real parties point to allegations in plaintiff's complaint that when petitioner took DES she was acting as plaintiff's "agent." These allegations were in support of a cause of action for fraud, which has since been dismissed. We do not regard them as a sufficient basis for characterizing plaintiff's claim as one "through or under" her mother. (We refrain from considering whether they present a classic case of "undisclosed principal.")

in support of her daughter's cause. We are not prepared to say, as defendants would have it, that by providing certain information of assistance to her daughter she has "tendered" her medical condition as an issue within the meaning of the patient-litigant exception described in Evidence Code section 996, subdivision (a), which exempts communications "relevant to an issue concerning the condition of the patient if such an issue has been tendered by: (a) the patient." The history of that exception and the reasons for its existence focus upon the patient's conduct in disclosing her own ailments "by bringing an action in which they are in issue." (*City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418].)[4] While the facts may suggest that petitioner is closely allied with her daughter in this matter, nothing in the legislative background of the patient-litigant exception or in its judicial implementation support its application to a witness who is not a party to the proceeding.

■ Petitioner's privilege is, however, subject to Evidence Code section 912, which provides (in subd. (a)) that the right of a person to claim the privilege "is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication." By testifying freely that she ingested DES, and as to certain of the circumstances in which she did so, petitioner has disclosed a "significant part" of her communications with physicians on that subject, and on the inextricably related subject of her pregnancy with plaintiff. Thus, she has waived her statutory privilege as to these matters.

It does not follow that petitioner, by disclosing portions of communications relating to her consumption of DES and her pregnancy with plaintiff, has waived her privilege as to all otherwise protected commu-

---

[4]Initially, the exception was limited to "an action to recover damages for personal injuries" (former Code Civ. Proc., § 1881, subd. (4)). With the adoption of the Evidence Code in 1965, the exception was broadened to extend its application to other matters in which the patient tenders the issue of his condition by instituting legal proceedings, as in an "[a]ction by patient to recover disability benefits under an insurance policy." (6 Cal. Law Revision Com. Rep. (1964) p. 413.)

Lilly suggests that plaintiff and her mother were "joint patients" in medical treatment, and for that reason joint holders of the privilege. Even if the suggestion had merit, it would not yield the result which Lilly seeks, for section 912, subdivision (b) provides: "Where two or more persons are joint holders of a privilege provided by Section ... 994 (physician-patient privilege) ... a waiver of the right of a particular joint holder of the privilege to claim the privilege does not affect the right of another joint holder to claim the privilege."

nications during her lifetime.[5] Even the waiver which follows upon tender of a medical issue by a party to the litigation does not extend that far: "the scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court." (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 864 [143 Cal. Rptr. 695, 574 P.2d 766] (italics omitted); see also *In re Lifschutz* (1970) 2 Cal.3d 415, 431 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Hallendorf* v. *Superior Court* (1978) 85 Cal.App.3d 553 [149 Cal.Rptr. 564].) And waiver through disclosure by a nonparty witness, proceeding from different policy premises and based on different statutory language, is presumably intended to be more limited in scope.

Defendants observe, and we agree, that the scope of waiver is not limited to what the patient intends: "As is stated in 8 Wigmore, Evidence, section 2327 (McNaughton rev. 1961), 'There is always the objective consideration that when his ... conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not.'" (*Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405, 414 [72 Cal.Rptr. 74].) But section 912 prescribes waiver with respect to "a communication" where there has been disclosure of a "significant part of the communication." We are prepared to accept that the term "communication" deserves, in this context, a liberal construction. A patient, for example, who has disclosed her conversation with a physician on Monday ought not be permitted to claim the privilege with respect to a conversation with the same physician and relating to the same subject matter on Tuesday. Arguably, the same is true where the patient consults more than one physician concerning the same subject matter, and discloses her communication with one of them. But it would distort the statutory language beyond its apparent meaning to say that the waiver extends to all communications with any physician at any time.

It would seem that the scope of the waiver should be determined primarily by reference to the purpose of the privilege, which, according to the Supreme Court, is "to preclude the humiliation of the patient that might follow disclosure of his ailments" (*City & County of S. F.* v. *Superior Court, supra*, 37 Cal.2d 227, 232). Where the disclosure sought is so related to the disclosure already made that the patient could not

---

[5]Lilly contends that petitioner has also waived her privilege in authorizing release of her medical records to plaintiff and by discussing her medical treatment with various people. The record evidence of such disclosures indicate they were limited to the matter of petitioner's pregnancy with plaintiff. Thus, for present purposes, they are redundant.

reasonably retain a privacy interest in preventing it, then the purpose of the privilege no longer exists, and it may be said that the privilege has been waived. ■ A patient ought not be permitted to claim the privilege merely in order to aid one of the parties to the litigation, where no legitimate claim to confidentiality exists.

It may be appropriate to say, for example, that petitioner is no longer in a position to invoke the privilege with respect to communications concerning prescription of DES for subsequent pregnancies; but it does not follow that she retains no interest in the confidentiality of other portions of her medical history, even assuming that history is relevant, as defendants contend, to the resolution of the factual issues posed in the litigation. ■ Under the statutory scheme, a party's need to know certain information will not overcome a nonparty's privilege under circumstances in which that privilege is otherwise properly invoked. (Cf. *Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594, 603 [162 Cal.Rptr. 724]; *Boddy* v. *Parker* (1974) 45 App.Div.2d 1000 [358 N.Y.S.2d 218]; *King* v. *O'Connor* (1980) 103 Misc.2d 607 [426 N.Y.S.2d 415].) If there is need for broader discovery in a case of this sort, the remedy lies with the Legislature, and not with the courts.[6]

■ The statutory privilege protects only against disclosure of "confidential communications" between patient and physician, and while that term is broadly defined to include any diagnosis made and advice given by the physician in the course of the physician-patient relationship (Evid. Code, § 992; see *Britt* v. *Superior Court, supra*, 20 Cal.3d 844, 862, fn. 7), it does not include information which does not intrude upon that relationship. Moreover, the scope of the privilege and of waiver is itself affected by constitutional principles. We therefore move to consideration of those principles before attempting further application of our analysis.

*Constitutional Right of Privacy*

■ There can be little doubt but that petitioner's medical history is entitled to a measure of protection under both federal and state Consti-

---

[6]As Professor Chafee observed nearly 40 years ago, in commenting upon the Code of Evidence drafted by the American Law Institute, "... no matter how numerous and careful the limitations, some new situation is bound to arise where secrecy ought not to be maintained; yet the Code will prevent disclosure because the draftsmen ... could not foresee this situation and so failed to insert any limitation to take care of it." (Chafee, *Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?* (1943) 52 Yale L.J. 607, 616.)

tutions. In *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 484 [14 L.Ed.2d 510, 514, 85 S.Ct. 1678], the United States Supreme Court declared that "[v]arious guarantees [of the Bill of Rights] create zones of privacy," and in *In re Lifschutz, supra,* 2 Cal.3d 415, 431-432, the California Supreme Court held that the confidentiality of the psychotherapeutic session falls within one such zone. Since that decision, the California Constitution has been amended to include among the inalienable rights of all people the right to pursue and obtain privacy (Cal. Const., art. I, § 1); and while "the full contours of the new constitutional provision have as yet not even tentatively been sketched . . ." (*White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222]), it has been observed that "elevation of the right to be free from invasions of privacy to constitutional stature was apparently intended to be an expansion of the privacy right." (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 [134 Cal.Rptr. 839].)

*Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal. App.3d 669 [156 Cal.Rptr. 55] involved an attempt by a state licensing agency to obtain the complete medical-hospital records of five named patients of a San Diego doctor under investigation by the board for alleged incompetence or gross negligence. The court opined: "A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected. . . . [¶] The individual's right to privacy encompasses not only the state of his mind, but also his viscera, detailed complaints of physical ills, and their emotional overtones. The state of a person's gastro-intestinal tract is as much entitled to privacy from unauthorized public or bureaucratic snooping as is that person's bank account, the contents of his library or his membership in the NAACP. We conclude the specie of privacy here sought to be invaded falls squarely within the protected ambit, the expressed objectives of article I, section 1." (*Id.*, at pp. 678-679. See also *Britt* v. *Superior Court, supra,* 20 Cal.3d 844, 863-864.)[7]

Surely no aspect of a woman's medical profile is more sensitive in terms of privacy interests than her obstetrical-gynecological history. It is precisely in the areas of marriage (*Loving* v. *Virginia* (1967) 388

---

[7]Lilly contends that *Gherardini* was erroneously decided in light of *People* v. *Privitera* (1979) 23 Cal.3d 697 [153 Cal.Rptr. 431, 591 P.2d 919], cert. den., 444 U.S. 949 [62 L.Ed.2d 318, 100 S.Ct. 419]. That case, however, held simply that article I, section 1 does not encompass "the . . . right to obtain drugs of unproven efficacy" (*id.*, at p. 702), a far cry from governmentally compelled intrusion into one's medical history.

U.S. 1, 12 [18 L.Ed.2d 1010, 1018, 87 S.Ct. 1817]), procreation (*Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 541-542 [86 L.Ed. 1655, 1660-1661, 62 S.Ct. 1110]), sexual relations and contraception (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453-454 [31 L.Ed.2d 349, 362-363, 92 S.Ct. 1029]), family relationships (*Prince* v. *Massachusetts* (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 652-653, 64 S.Ct. 438]), along with child rearing and education (*Pierce* v. *Society of Sisters* (1925) 268 U.S. 510, 535 [69 L.Ed. 1070, 1078, 45 S.Ct. 571, 39 A.L.R. 468]) that the United States Supreme Court has recognized a federally protected guarantee of personal privacy (see *Roe* v. *Wade* (1973) 410 U.S. 113, 153 [35 L.Ed.2d 147, 177, 93 S.Ct. 705]), and a concomitant privacy interest in "the intimate medical problems of family, marriage, and motherhood" (cf. *United States* v. *12 200-Ft. Reels of Film* (1973) 413 U.S. 123, 127, fn. 4 [37 L.Ed.2d 500, 505, 93 S.Ct. 2665]). Whether that intimacy is invaded through intrusion upon communications between the woman and her physician or more directly through demands upon the woman for disclosure of symptoms or conditions relating to her pregnancy would not appear to be critical for constitutional purposes. In other words, the right of privacy under federal and state Constitutions extends beyond the "confidential communications" protected by statute.

The constitutional right is by no means absolute. The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential material, including even communications between a psychotherapist and his patient. (*In re Lifschutz, supra*, 2 Cal.3d 415, 432-433.) But intrusion upon constitutionally protected areas of privacy requires a "balancing of the juxtaposed rights, and the finding of a compelling state interest." (*Board of Medical Quality Assurance* v. *Gherardini, supra*, 93 Cal.App.3d at p. 681; *Britt* v. *Superior Court, supra*, 20 Cal.3d 844; *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].) Thus, petitioner's privacy interests must be carefully weighed against the legitimate interests of real parties in preparing their defense.

*Conclusion*

The 11 specific questions which the trial court ordered petitioner to answer relating to the period prior to plaintiff's birth (and which petitioner is apparently willing to answer) seek information concerning the physician who prescribed DES, the pharmacy which filled the pre-

scription, and where plaintiff's delivery took place. None of these call for communications within the physician-patient privilege. (See *Henard v. Superior Court* (1972) 26 Cal.App.3d 129, 133 [102 Cal.Rptr. 721].) Moreover, whatever minimal privacy interest petitioner might have had with respect to such information was waived by petitioner's disclosures concerning the subject matter. Thus, there is no statutory or constitutional obstacle to this portion of the trial court's order.

The three specific questions which the trial court ordered petitioner to answer relating to the period *after* petitioner's birth (and which petitioner is unwilling to answer) likewise do not call for communications within the statutory privilege. And, in our opinion, the trial court was justified in concluding that such questions did not unreasonably intrude upon petitioner's constitutional right to privacy. We conclude, therefore, that this portion of the trial court's order was proper.

 There remains for consideration the propriety of the trial court's order directing petitioner generally to answer questions regarding her medical history subsequent to plaintiff's birth. If this order were interpreted to require petitioner to respond to all such questions, upon penalty of sanctions, the order would be invalid under the tests we have discussed. Petitioner's waiver of her statutory patient-physician privilege does not extend to her lifetime medical history, but only to those matters as to which, based upon her disclosures, it can reasonably be said she no longer retains a privacy interest. And, while defendants have arguably demonstrated in general terms through Dr. Richart's declaration that some matters relating to that medical history might be relevant to determination of issues in the litigation,[8] the record does not reflect the sort of specificity and careful balancing of interests which the Constitution requires for such a broad-scale invasion of privacy.

Defendants contend, however, and we agree, that this portion of the court's order was not intended, and ought not be interpreted, as a blanket directive but rather as a denial by the trial court of petitioner's blanket claim of immunity from obligation to answer *any* questions relating to the period after plaintiff's birth. Viewed in that light, the order does not offend petitioner's rights, since questions may be asked con-

---

[8]Dr. Richart's declaration was supplemented *on appeal* by declarations from other physicians. Because in our view it is the trial court which must undertake the balancing of interests in the first instance, we refrain from passing judgment upon that supplemental material.

cerning matters which are neither statutorily privileged nor constitutionally protected. As further issues of privilege and privacy arise through implementation of the court's order, the trial court will be in the best position to assess the competing interests and to exercise its broad discretion in discovery matters in accordance with applicable principles. (*Valley Bank of Nevada* v. *Superior Court, supra*, 15 Cal.3d 652, 658.)[9] Subject to these observations, and to the preceding analysis, we find no reason to disturb the rulings which the trial court has made.

## II.

### BENNY *v.* SUPERIOR COURT

■ The issue posed by the order which plaintiff Benny complains of—requiring her, in effect, to attempt to obtain certain information from her mother in order to respond to certain interrogatories—calls, we believe, for similar deference to the trial court's discretion. "A party may not refuse to admit or deny matters set forth in a request for admissions of fact ... merely because he lacks personal knowledge of those facts if the means of knowledge are reasonably within his power. In *Chodos* v. *Superior Court* [1963] 215 Cal.App.2d 318 [30 Cal.Rptr. 303], it was held ... that a party without personal knowledge would be required to make a reasonable investigation to ascertain the facts when it affirmatively appeared that he had available to him sources of information as to the facts or matters involved in the request for admissions." (*Lindgren* v. *Superior Court* (1965) 237 Cal.App.2d 743, 746 [47 Cal.Rptr. 298, 20 A.L.R.3d 748]; accord, *Smith* v. *Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 275 [150 Cal.Rptr. 828].) While these cases involved requests for admissions, there appears to be no reason for a different rule in the case of interrogatories. (See Powers, *A Guide to Interrogatories in California Practice* (1975) 48 So.Cal.L. Rev. 1221, 1268.)

We, of course, do not suggest that a mother's information is necessarily or even typically within the power of her daughter to obtain for the asking. The relationship of mothers and daughters is undoubtedly as varied as human beings upon the earth, and certainly beyond the power

---

[9]It has been held that "where an exception to a privilege depends upon the content of a communication, the court may require disclosure *in camera* in making its ruling." (*Mavroudis* v. *Superior Court, supra*, 102 Cal.App.3d 594, 606; see also *In re Lifschutz, supra*, 2 Cal.3d at p. 437, fn 23; *Valley Bank of Nevada* v. *Superior Court, supra*, 15 Cal.3d at p. 658.) Such a procedure may be useful in this type of case.

of courts to predict, much less to control. Nor are we impressed with the fact that plaintiff's complaint originally contained allegations to the effect that her mother acted as her "agent" in taking DES. (Cf. *Pantzalas* v. *Superior Court* (1969) 272 Cal.App.2d 499 [77 Cal.Rptr. 354].) But from the record before the court, it appears that plaintiff's mother has been cooperating closely in her daughter's lawsuit; the making of inquiry posed no discernible burden upon the plaintiff (cf. *Bunnell* v. *Superior Court* (1967) 254 Cal.App.2d 720 [62 Cal.Rptr. 458]); and while her mother was accessible to defendants through deposition, responses to interrogatories, if they could be obtained, might provide a useful basis for more focused questioning. Of course, her mother was and is free to say no for privacy reasons or any reasons. Under the circumstances, the trial court did not abuse its discretion by directing plaintiff, in effect, to make a good faith inquiry of her mother regarding the subject matter of the interrogatories.

Both petitions for peremptory writ are denied, and the alternative writs are discharged.

Racanelli, P. J., and Elkington, J., concurred.