[No. H002447. Sixth Dist. Jan. 20, 1987.]

TRANSAMERICA TITLE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BANK OF THE WEST, Real Party in Interest.

**COUNSEL**

Levinson & Lieberman and Lawrence R. Lieberman for Petitioner.

No appearance for Respondent.

Buchalter, Nemer, Fields, Chrystie & Younger, Kenneth K. Kennedy, Jr., Peter M. Rehon and Lisa C. Egan for Real Party in Interest.

**OPINION**

AGLIANO, P. J.—Transamerica Title Insurance Company (Transamerica) is a defendant in an action for, among other things, breach of title insurance contract, and tortious breach of the covenant of good faith and fair dealing. By petition for extraordinary writ, Transamerica seeks review of a discovery order which requires it to produce certain documents despite its assertion of the attorney-client privilege. On the basis of the record before us, we conclude that the documents fall directly within the purpose and scope of the privilege, and any asserted waiver of the privilege in this case is insufficient to encompass the documents sought to be disclosed. A writ of mandate should issue directing respondent superior court to vacate its order that the disputed documents be produced and to enter an order denying plaintiff's motion to compel production.

Bank of the West (the Bank) made a claim on a title insurance policy issued by Transamerica. The claim was denied and thereafter the Bank sued for,

among other things, bad faith breach of an insurance contract and breach of statutory duties under Insurance Code section 790.03. Transamerica answered the complaint and cross-complained for declaratory relief. In its answer to the bad faith action, Transamerica did not raise the affirmative defense of advice of counsel.

The Bank then asked by way of interrogatory whether Transamerica was making the contention that it relied on the advice of counsel in connection with its handling of the Bank's claims against the policy. Transamerica responded to the interrogatory in the following manner: "Yes, prior to initiating the declaratory relief action, Transamerica requested the firm of Levinson & Lieberman to render an advisory opinion as to its rights and obligations under the policy given the facts of this case. On June 21, 1985, a letter was sent to Lawrence Parker setting forth the analysis of the firm of Levinson & Lieberman concerning this case. Without intending to waive any other aspects of the attorney/client privilege, a true and correct copy of said letter is attached hereto."

The letter referred to in the answer is signed by Lawrence R. Lieberman of the firm of Levinson and Lieberman, Inc. and addressed to Mr. Lawrence Parker, division counsel for Transamerica. The letter in 14 pages outlines the facts of the case, the various duties imposed on Transamerica, and the options available to it under the circumstances. The letter concludes by recommending that Transamerica institute an action for declaratory relief to preclude any potential complaint for bad faith breach of the insurance contract.

The Bank then served a request to produce all notes, memoranda and other documents relating to advice given to Transamerica relating to the Bank's claim which is the subject of the bad faith action. Transamerica identified a number of documents, but refused to produce them, claiming the attorney-client privilege. The Bank then sought to compel production. The trial court appointed the Honorable William J. Harris (ret.) as "special master," who thereafter ordered that the documents be produced for his in camera inspection.[1]

The special master thereafter conducted a hearing on his in camera review. Transamerica acknowledged that the Bank was entitled to anything that dealt with the advice of counsel to the extent the defense would be relied upon in the case. Counsel stated that he would submit to having his deposition taken and said that the substance of his testimony would be that the Bank's

---

[1]This court construes the procedure by which Referee Harris was designated a "special master" as a reference "to hear and determine any and all discovery . . . in the action and to report findings and make a recommendation thereon." (Code Civ. Proc., § 639, subd. (e).)

claim did not present a clear case of coverage and thus he advised Transamerica to file the cross-action. The Bank took the position that the attorney-client privilege no longer existed with respect to any communications between the law firm and Transamerica in which the latter received advice about the claim or the lawsuit. The Bank argued that the advice given by Mr. Lieberman's firm to Transamerica occurred over a long period of time and involved a different number of "facets" and not just the original decision. The special master noted that because of the continuing representation of the law firm, the logic of the Bank's position dictated that any communication made by the firm to Transamerica which pertained to the lawsuit would be subject to disclosure. The Bank answered that that was indeed a problem in the case, but so long as the advice continued to be rendered it would be clearly relevant to the bad faith aspect of the Bank's lawsuit. At the conclusion of the hearing, the special master recommended that the withheld documents be produced because (1) they touch or bear upon the advice given to Transamerica by the law firm of Levinson and Lieberman; or (2) indicate that Transamerica did not necessarily follow the advice given; or (3) indicate that Transamerica personnel participated in the making of decisions; or (4) indicate Transamerica acted on occasion without the advice of counsel. The trial court followed the special master's recommendation.

Transamerica then filed for reconsideration of the order, asserting that the special master misconstrued the limit to which the advice of counsel defense would be used at trial. Transamerica stipulated on the record that it would not rely on the defense to defend the entire bad faith cause of action, but would raise the issue only to explain the filing of the action for declaratory relief. Nevertheless, the special master refused to reconsider his recommendation.

This petition followed.

Initially, this court has some concern about the special master's order that Transamerica provide the disputed documents to him for his in camera inspection. Evidence Code section 915 prohibits, with certain exceptions not applicable here, the presiding officer at any hearing from requiring the disclosure of information claimed to be privileged in order to rule on the privilege claim. (See *Romo v. Southern Pac. Transportation Co.* (1977) 71 Cal.App.3d 909, 922 [139 Cal.Rptr. 787].) However, Transamerica complied with the special master's request to produce the documents, and the record in this petition suggests that all the parties tacitly approved of the procedure followed by both the special master and the trial court. Moreover, Transamerica placed the documents into the record on this petition expressly for this court's review. Accordingly, this petition was decided under the assumption that section 915's proscription has been waived.

Turning to the merits, the Bank argues that invocation of the attorney-client privilege in these circumstances would deny them access to information which is crucial to their ability to verify if, in fact, Transamerica relied and continues to rely on the advice of its counsel in taking its position on the Bank's claim. ■ But the privilege is not vitiated by the fact that its exercise may occasionally suppress relevant evidence. It has been recognized that the search for truth must sometimes give way to the purposes of the privilege. As the American Law Institute has pointed out, "the continued existence of the privilege is justified on grounds of social policy. In a society as complicated in structure as ours and governed by law as complex and detailed as those imposed upon us, expert legal advice is essential. To the furnishing of such advice the fullest freedom and honesty of communication of pertinent facts is a prerequisite. To induce clients to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of the evidence in specific cases." (Model Code rule 210 com., quoted in 6 Cal. Law Revision Com. Rep. (1964) p. 381, fn. 1; cf. *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 600 [208 Cal.Rptr. 886, 691 P.2d 642] [" 'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' "]; 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1108, p. 1048; *Benge* v. *Superior Court* (1982) 131 Cal.App.3d 336, 344 [182 Cal.Rptr. 275].)

■ The privilege may be waived impliedly or by disclosure of the subject communication. The privilege is waived with respect to a protected communication if any holder of the privilege voluntarily discloses a significant part of the communication or has consented to such disclosure made by anyone. (Evid. Code, § 912, subd. (a).) What constitutes a significant part of the communication is a matter of judicial interpretation; however, the scope of the waiver should be determined primarily by reference to the purpose of the privilege. (*Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534, 547 [174 Cal.Rptr. 148].) The privilege may also be impliedly waived where a party to a lawsuit places into issue a matter that is normally privileged. It is said that in that case the gravamen of the lawsuit is so inconsistent with the continued assertion of the privilege as to compel the conclusion that the privilege has in fact been waived. (*Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825 [134 Cal.Rptr. 130].) The scope of either a statutory or implied waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver. (See, e.g., *Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436 [191 Cal.Rptr. 871]; *Jones* v. *Superior Court, supra,* 119 Cal.App.3d 534.) ■ Privileged communica-

tions do not become discoverable simply because they are related to issues raised in the litigation. (*Schlumberger Limited* v. *Superior Court* (1981) 115 Cal.App.3d 386 [171 Cal.Rptr. 413].)

■ No statutory waiver of the sought after communications occurred. Except for the June 21 letter, no attorney-client communications were revealed to any other party. The Bank implies that Transamerica's disclosure of its attorneys' advice contained in the letter disclosed the significant part of Transamerica's communications to its lawyers concerning the litigation. We do not agree. The documents sought to be disclosed in this case all post-date the filing of Transamerica's cross-action and pertain to matters about the conduct of the litigation. In view of Transamerica's concession to limit the advice of counsel defense only to explain the filing of the cross-action, disclosure will not significantly further the Bank's case but will surely impinge on Transamerica's ability to freely and openly communicate to its attorneys matters about the ongoing lawsuit. Although the parties and the special master agreed that communications pertaining to Transamerica's trial strategy and tactics were not subject to disclosure, it is difficult, after reviewing the subject documents, to determine where the line would be drawn between the attorneys' advice and matters which pertain to trial strategy and tactics.

■ Transamerica also has not impliedly waived the privilege. Generally, implied waivers are limited to situations where the client has placed into issue the decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters. (*Estate of Kime* (1983) 144 Cal.App.3d 246, 259 [193 Cal.Rptr. 718].) Generally, too, the deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice. (See *Handgards, Inc.* v. *Johnson & Johnson* (N.D.Cal. 1976) 413 F.Supp. 926, 929.) However, an insurer does not waive the attorney-client privilege where it is not defending itself on the basis of the advice it received. (*Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467 [200 Cal.Rptr. 471].)

This court acknowledges the Bank's contention that it needs the documents to verify the degree to which Transamerica relied and is continuing to rely on the advice of its counsel. ■ But the privilege is not to be set aside when one party seeks verification of the authenticity of its adversary's position. *Mitchell* v. *Superior Court, supra,* 37 Cal.3d 591, illustrates this point. In that case, the parties seeking discovery argued that discovery of privileged information might help them verify the genuineness and reasonableness of the plaintiff's claim for emotional distress. The court reasoned that what was at issue was the plaintiff's state of mind as to her emotional

distress and not the state of mind of her attorneys. In view of Transamerica's stipulation that it will limit its use of the advice of counsel defense, the issue about whether Transamerica continues to decline to pay the claim and is maintaining the litigation in bad faith is a question only about the state of mind of Transamerica's corporate decision makers. (See *Aetna Casualty & Surety Co.* v. *Superior Court, supra,* 153 Cal.App.3d at p. 475.) Consequently, the sought for communications bear only an indirect relevance to the lawsuit, and their disclosure would significantly burden the privilege accorded to Transamerica and its attorneys.

The procedural requirements for a peremptory writ in the first instance have been met. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-183 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent Santa Clara County Superior Court to vacate its October 8, 1986 order in action No. 582719 ordering the production of 17 specified documents, and to enter a new order denying plaintiff's motion to compel production of such documents. The stay of the enforcement of the above-specified order previously ordered herein shall be dissolved upon issuance of the peremptory writ.

Brauer, J., and Capaccioli, J., concurred.