In re the MARRIAGE OF Sela HUTCHINSON and Roy M. Hutchinson.

Upon the Petition of

Sela Hutchinson, Appellee,

And Concerning

Roy M. Hutchinson, Appellant.

No. 97–1075.

Supreme Court of Iowa.

Jan. 21, 1999.

James R. Van Dyke of Van Dyke & Werden, P.C., Carroll, and Pete Leehey of Leehey & Valentine, Fort Dodge, for appellant.

Sharon R. Stevens and Susan Ekstrom, Des Moines, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

LAVORATO, Justice.

This appeal stems from a minor's suit for loss of parental consortium arising out of the alleged negligent medical treatment of the minor's parent. The issue is whether the suit waives that parent's statutory physician-patient privilege against disclosure of her medical records even though she is not a party to the suit and refuses to waive her privilege. We agree with the district court that the suit does not waive the privilege, and we affirm.

## I. Facts and Proceedings.

In February 1995, the district court dissolved the marriage of Roy and Sela Hutchinson. The court granted primary physical care of their son, Jacob, to Roy.

The dispute regarding Sela's medical and mental health records, however, dates back to March 1994 when the dissolution proceedings were pending. The district court first ordered the production of Sela's records on March 17, 1994. The order provided that the records "be held in confidence by and be accessible only to the parties, their attorneys and the Court." The court entered the order pursuant to Roy's motion to produce in which he alleged that Sela's "condition, mentally and emotionally, will be an issue in this case and thus under Iowa Code section 622.10, these records are vital to the determination of the best interests of [Jacob]."

On April 1 the parties filed a stipulation in which they agreed that Roy would have temporary physical custody of Jacob subject to Sela's visitation rights. The stipulation further provided that the production of Sela's medical and mental health records would be postponed. The court filed an order approving the stipulation on the same day.

On September 22 Sela filed an application for modification of the order approving the stipulation, seeking to expand her visitation rights. This filing prompted Roy to file a "renewed motion for order producing medical and mental health records." The court filed an order granting the motion on September 27. The court again ordered that such records "will be held in confidence by and be

accessible only to the parties, their attorneys and the Court."

On October 24 the court granted Roy's motion for an order directing that Sela's health care professionals give testimony regarding their treatment of her. The court denied Sela's motion to reconsider. Following this skirmish, the parties entered into a partial stipulation, filed January 25, 1995, in which they agreed Roy would have physical custody of Jacob, subject to Sela's visitation rights. The court approved the stipulation.

The case proceeded to trial with the principal issues being division of personal property, property valuations, assignment of debt, alimony for Sela, attorney fees for Sela, and a pick-up time issue on visitation. The court entered its decree of dissolution on February 6, 1995.

On December 26, 1995—less than a year later—Sela filed a petition to modify the dissolution decree to expand her visitation rights. Roy also filed a petition to modify the dissolution decree seeking to revise the visitation schedule.

At this point, Sela's medical and mental health records again became an issue when Roy's sought production of Sela's additional hospital and mental health records. In his motion, Roy again asserted that Sela's condition, "physically, mentally, and emotionally, would be an issue in the case and thus under Iowa Code section 622.10, these records are vital to the determination of the best interests of [Jacob]." District Judge Allan L. Goode ordered Sela to produce the records but ordered Roy and his attorney not to disclose them to third parties.

On July 5, 1996, District Judge Kurt L. Wilke modified the decree, requiring that a third party supervise Sela's visitation with Jacob. The court ordered Roy not to disseminate Sela's medical and mental health records in his possession to "parties other than his attorneys absent further Court order." Additionally, the court "maintained jurisdiction of this case so that at such time as [Sela's] treating physicians and counselors indicate supervision is no longer necessary, this issue may be reviewed."

About one week later, Roy moved for an order modifying the September 27, 1994 protective order filed in the dissolution proceedings. According to his application, Roy had filed two civil suits—one in Webster County and one in Polk County—seeking money damages from some of Sela's medical health providers. Roy filed the suits on behalf of his minor child, Jacob, and alleged the providers negligently treated Sela. The claim was for loss of parental consortium. Roy alleged Sela's medical records were vital to the suit and asked the court "to permit access and review of [Sela's] medical records by attorneys, experts, insurance carriers and claims representatives, and eventually the jury and court attendant in the civil litigation ... brought on Jacob's behalf in Polk County and Webster County."

On August 28, over Sela's resistance, Judge Wilke ordered Sela's records be disclosed "to the following parties in the civil suits brought by [Roy] on behalf of [Jacob]: defendants' attorneys, plaintiff's attorneys, plaintiff's experts, and defendants' experts." About six months later, Roy moved to expand Judge Wilke's order, seeking permission to use Sela's medical records in depositions of Sela, her therapists, and nontreating experts. Sela resisted. Following a hearing, Judge Wilke denied Roy's motion to expand the protective order on April 28, 1997.

Roy moved to amend, modify, or enlarge the April 28, 1997 ruling. Judge Wilke obliged by stating in his order of May 9, 1997:

Previously, this Court ordered that [Sela] cannot be compelled to testify regarding her mental health treatment which is privileged information. Respondent now seeks an enlargement of that Order specifically asking that the Court address the issue as to whether [Sela's] mental health therapists may be compelled to testify in a pending civil action regarding her care, treatment, diagnosis, prognosis, and all contacts or communications they have had with [Sela] in the course of their mental health treatment. In addition, [Roy] desires to use [Sela's] mental health rec-

ords in the course of their depositions of nontreating experts and other individuals.

This Court will enlarge the previous Order by providing that [Roy] may not depose [Sela's] mental health therapists or use her mental health records in the course of depositions of nontreating experts absent [Sela's] waiver of privilege or a showing that she is incapable of granting such a waiver. Contrary to [Roy's] assertion, this Court believes that this Order is in compliance with the plain language of Iowa Code section 622.10.

In his appeal, Roy asserts, as he did in the district court, that Iowa Code section 622.10 allows for use of the records in Jacob's civil suit. He claims Jacob's civil suit is "through or under" Sela pursuant to the language in the statute.

■ This case turns on our interpretation of Iowa Code section 622.10 (1997). Because interpretation of a statute is a question of law, our review is for correction of errors at law. *State v. Stanford,* 474 N.W.2d 573, 574 (Iowa 1991).

## II. Iowa Code Section 622.10.

**A. The law generally.** Iowa Code section 622.10 provides in relevant part:

A ... counselor, physician, surgeon ... mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the persons employment, ... shall not be allowed, *in giving testimony,* to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline. The prohibition does not apply to cases where the person in whose favor the prohibition is made *waives* the rights conferred; nor does the prohibition apply to physicians or surgeons, physician's assistants, mental health professionals, or to the stenographer or confidential clerk of any physicians or surgeons, physician's assistants, or mental health professionals, *in a civil action in which the condition of the*

*person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person. The evidence is admissible upon trial of the action only as it relates to the condition alleged.*

*Id.* (emphasis added).

■ The physician-patient privilege in section 622.10 has a unique and limited purpose. *Chidester v. Needles,* 353 N.W.2d 849, 852 (Iowa 1984). Because the section 622.10 privilege is in derogation of every person's duty to give evidence, it is subject to special restrictions. *Id.* Thus, the privilege, in the plain language of the statute, applies only to testimonial use of confidential information. Iowa Code § 622.10 ("in giving testimony"); *Roosevelt Hotel Ltd. v. Sweeney,* 394 N.W.2d 353, 355 (Iowa 1986). *But see Chung v. Legacy Corp.,* 548 N.W.2d 147, 149 (Iowa 1996) ("The statutory rule of testimonial exclusion [in section 622.10] has been extended by [Iowa Rule of Civil Procedure 122(a)] to the discovery of confidential communications.").

■ Testimony includes declarations of a witness under oath. *Sweeney,* 394 N.W.2d at 355. For this reason, the section 622.10 privilege includes declarations by a witness in court or in a deposition. *Id.* On the other hand, the privilege does not prohibit a physician in a nontestimonial setting from disclosing any confidential communications. *Id.* Only the physician's ethical obligation prohibits the physician from making the disclosure without the patient's consent. *Id.*

Referring again to the plain language of the statute, we note the privilege does not apply where the person in whose favor the privilege is made waives it. Iowa Code § 622.10 ("The prohibition does not apply to cases where the person in whose favor the prohibition is made waives the right conferred...."); *Bradshaw v. Iowa Methodist Hosp.,* 253 Iowa 1360, 1362, 115 N.W.2d 816, 817 (1962) (holding that the section 622.10 privilege is personal to the patient and only the patient may claim or waive the confidentiality).

**B. The patient-litigant exception.** That brings us to the patient-litigant exception in the statute which is the subject of this appeal: "[N]or does the prohibition apply to ... mental health professionals ... in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person." Iowa Code § 622.10. This exception denies the privilege where the patient, or someone claiming through or under the patient, has brought the mental or physical condition of the patient into issue as the basis for the claim or as a basis for the defense. The object of the patient-litigant exception is to prevent the patient from using the privilege to suppress evidence after the patient has frustrated the purpose of the privilege by introducing evidence on his or her own medical condition. Steven P. Flood, *The Physician–Patient Privilege Under the New Code*, 33 J.B. Ass'n Kan. 10, 147 (1964) (discussing Kansas' patient-litigant exception which states: "There is no privilege under [the physician-patient privilege provision] in an action in which the condition of the plaintiff is an element or factor of the claim or defense of the patient or of any party claiming through or under the patient....").

Relying on the patient-litigant exception, we have held the physician-patient privilege is inapplicable in an involuntary hospitalization proceeding. *In re T.C.F.*, 400 N.W.2d 544, 550 (Iowa 1987). We stated our rationale for doing so this way:

We believe a hospitalization proceeding, which involves an application, notice, hearing, and a final adjudicative order by the court, must be considered to be an action under section 622.10. It is, in fact, difficult to conceive of any type of case in which the condition of the person asserting the privilege is any more at the heart of the controversy than in a proposed involuntary hospitalization. We hold the doctor-patient privilege of section 622.10, therefore, is inapplicable.

*Id.*

In contrast, in *Chung* we held that the mere denial of a physical condition does not call into play the patient-litigant exception. There, a motorist injured in an automobile accident sued, claiming the defendant was negligent in the operation of his motor vehicle while the defendant was under the influence of alcohol. The plaintiff attempted to take the deposition of the doctor who had treated the defendant following the accident. We granted an interlocutory appeal when the district court granted the plaintiff's application to take the deposition. On appeal, the plaintiff contended that the patient-litigant exception abrogates the physician-patient privilege when the condition of a party is in issue. *See Chung*, 548 N.W.2d at 147.

Relying on the plain language of section 622.10, we rejected the plaintiff's contention:

The statute requires the condition be an element or factor of the claim or defense *of the person claiming the privilege.* The denial of an element or factor of one's opponent's case does not make that element or factor part of the case of the person making the denial. In other words, even though [the defendant] denied he was intoxicated, his intoxication remains an element or factor in [the plaintiff's] claim. We can state with confidence that if [the defendant's] intoxication were not an element or factor in [the plaintiff's] claim, it would not be an issue in the case; [the defendant] would have no reason to make it a factor or element in his case. Therefore, the mere act of denying the existence of an element or factor of an adversary's claim does not fall within the statutory language.

*Chung*, 548 N.W.2d at 150.

In addition, we pointed to the underlying purpose of section 622.10 to support our interpretation of the patient-litigant exception:

Any other interpretation of the patient-litigant exception would severely undermine the purpose of the statutory privilege.... The interpretation sought by [the plaintiff] would seriously thwart the legislature's goal of enhancing candid physician-patient communications.... There are few cases in which an imaginative lawyer could not make the opposing party's physical or mental condition at least a

factor in the case. If such tactics were sufficient to trigger the exception, there would be little left of the privilege.

*Id.* at 150–51 (footnote omitted).

### III. Analysis.

In this appeal, we face another imaginative attempt to trigger the section 622.10 patient-litigant exception. To trigger the exception, Roy relies on the language "claiming through or under the person." Roy argues that the physician-patient privilege does not apply in this case if Jacob's claim is "through or under" his mother, Sela.

Roy interprets the language "claiming through or under the person" as clearly meaning that Jacob's loss of parental consortium claim is through or under the patient—in this case, Jacob's mother—in whose favor the privilege against disclosure operates. This is so, Roy concludes, because without the alleged negligent treatment received by Sela, Jacob would have no claim.

Roy has a fallback position: Even if the language "claiming through or under the person" is ambiguous, applying rules of statutory construction would lead to the same result. In this connection, he relies on the common meaning of the words "through" and "under." "Through," he says, means "in consequence of, by reason of . . . because of, . . . by the intermediary of, in the name or as agent of, by the agency of; because of." "Under," he says, means "inferior or subordinate." He notes the definition of "under" is very similar to the definition of "through." Thus, he recognizes some overlap or redundancy between the two terms.

Giving full meaning to the words the legislature has chosen, Roy concludes Jacob has a claim "in consequence of, by reason of . . . because of" alleged negligent medical treatment provided to his mother. Or, in the words of the statute, Jacob's claim is "through" his mother.

■ We reject Roy's contention that the words "through or under" in the context of the statute are clear and unambiguous. Because we find such words are ambiguous, we resort to rules of statutory construction. *See DeMore v. Dieters,* 334 N.W.2d 734, 737 (Iowa 1983) (holding that rules of statutory construction are to be used only when the terms of the statute are ambiguous). In construing a statute, our ultimate goal is to determine legislative intent. *Id.* In determining such intent, we apply the rule that each statute "shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." Iowa Code § 4.2. Other rules of statutory construction require us to consider legislative history and the consequences of a particular construction. Iowa Code §§ 4.6(3), 4.6(5).

Because the statute does not define the words "through or under," Roy correctly looked to the common meaning of these words. *See generally State v. Kidd,* 562 N.W.2d 764 (Iowa 1997). We have no quarrel with the meaning Roy attaches to them. Our own research indicates the meanings are accurate. *See, e.g.,* Webster's Third International Dictionary 2384 (unab. ed.1993) (defining "through" to mean by means of; by the help or agency of; by the intermediary of) and 2847 (defining "under" to mean subject to the bidding or authority of).

■ We do, however, disagree with Roy's analysis. We think the words "of any party claiming through or under the person" refer to a person acting in a representative capacity. The meanings given to the word "through," that is, "by means of; by the help or agency of; by the intermediary," *"in the name of"* all relate to action on behalf of another. The meaning of the word "under," that is, "subject to the bidding or authority of," describes the power of the person being represented over the actions of the representative. For example, the agent is subject to the authority of the principal.

In our search, we have discovered persuasive authority supporting our analysis. *See Jones v. Superior Court,* 119 Cal.App.3d 534, 174 Cal.Rptr. 148 (1981). In *Jones,* the plaintiff claimed an injury allegedly resulting from her mother's ingesting the drug DES while the plaintiff was in utero. The mother was not a party to the suit and refused to divulge medical records relating to her after the plaintiff's birth. California has several patient-litigant exceptions to its physician-patient privilege statute. One of those ex-

ceptions is very similar in wording to the patient-litigant exception in our statute. The California exception provides that there is no physician-patient privilege with respect to communications relevant to an issue concerning the condition of the patient when such issue "has been tendered" by a "party claiming through or under the patient." Cal. Evid.Code § 996(b) (West 1981).

The *Jones* court concluded the section 996(b) patient-litigant exception did not apply to the facts before it. Significantly, the court said:

> [The] plaintiff by her instant action is not "claiming through or under the patient" within the meaning of subdivision (b) of section 996. That language is derived from rule 27(4) of the Uniform Rules of Evidence, drafted in 1953 by the National Conference of Commissioners on Uniform State Laws, and is characterized by the California Law Revision Commission as applying to "a plaintiff in the patients shoes." The example given is an action by a patient "by guardian to set aside a deed by [the] patient or to cancel a contract for want of capacity of the patient to execute the instrument." *Id.* Plaintiff does not stand in her mother's shoes, she stands in her own; and the injuries she complains of are to her own body. Nothing in the legislative history, and no cited authority, supports application of the "through and under" exception here.

119 Cal.App.3d at 545, 174 Cal.Rptr. at 154 (citation omitted).

The predecessor statute to section 622.10 had no provision allowing a representative of the patient to waive the physician-patient privilege when the patient was unable to do so. This court read such a right into the statute for the reasons expressed in *Denning v. Butcher*:

> The executor called these physicians as witnesses, and by doing so he has waived the provisions of the statute prohibiting them from giving evidence acquired in the performance of their duties as physicians to [the testator-patient] during his lifetime. In such cases the statute protecting one during his lifetime from the disclosure of confidential communications hardly re-

quires that construction, in case of his death, which will prevent the accomplishment of the policy of the law in upholding his testamentary disposition of his property, and deprive the court, and parties interested in maintaining the will, of evidence which must often be of the most satisfactory character. We discover no good reason why the privilege of the statute may not be thus waived by those whose interest it is to maintain the integrity of the will, thus effectuating the wishes of its maker.

91 Iowa 425, 437, 59 N.W. 69, 73 (1894).

In 1967—fourteen years after rule 27(4) of the Uniform Rules of Evidence was drafted—the Iowa legislature added the patient-litigant exception containing the words "through or under." We think it is safe to assume that our legislature—like the California legislature—borrowed this language from rule 27(4). In doing so, the legislature simply codified the *Denning* holding by the words "through or under." Thus, section 622.10, as it now stands, allows a party claiming through or under a patient in a representative capacity to waive the physician-patient privilege in circumstances where the patient is unable to do so.

 It is true that Jacob would have no claim for loss of parental consortium unless there was negligent medical treatment of his mother. *Cf. Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 226 (Iowa 1998) (holding that plaintiff-wife suing for loss of spousal consortium must prove injury to plaintiff-husband). In other words, Jacob must prove the doctors negligently treated his mother before he can succeed on his claim. Beyond this, Jacob's claim for loss of parental consortium does not depend on Sela's claim for personal injuries arising out of the alleged negligent medical treatment. This is because a child's loss of parental consortium claim is separate and distinct from a parent's negligence claim out of which the consortium claim arises:

> While an action such as this one for loss of parental consortium must be brought in conjunction with the injured parent's own action where feasible, the children's claim

is in reality their own claim, different from an administrator's claim in the wrongful death case. An administrator's death claim is his claim; it is in him by virtue of the wrongful death or survival statute and would not otherwise exist. Only he can sue the claim. On the contrary, the claim for loss of parental consortium, pre-death at least, is not the property of the parent. The children's claim is prosecuted by the injured parent and in conjunction with the parent's own case, whenever feasible, not because the claim is in the parent but rather to reduce a multiplicity of suits and the possibility of double recovery. Indeed, if prosecution of the children's claims with the parent's claim is unfeasible, the children's claim may be brought by them through a next friend—or by the children themselves if they have achieved majority. The parent is merely the conduit, the nominal plaintiff.

*Beeck v. S.R. Smith Co.,* 359 N.W.2d 482, 486–87 (Iowa 1984) (citations omitted).

Thus, Jacob does not stand in his mother's shoes; he stands in his own shoes. He is suing for injuries he suffered—loss of parental consortium.

 This is a classic case where a child's claim cannot feasibly be prosecuted by the injured parent and in conjunction with the parent's own case. This is so because Sela has refused to sue her doctors for any alleged damage to her caused by the doctors' negligence, necessitating the prosecution of Jacob's claim through a next friend—his father.

Had Sela sued, she would have waived her physician-patient privilege but only because her condition was an element or factor of her *own* claim. But this is not what happened. To the contrary, as we said, Sela has refused to sue her doctors or allow anyone else to do so in her stead. In these circumstances, we would effectively gut the statute were we to hold that a suit Sela strongly resists results in her waiving her physician-patient privilege against disclosure.

Our construction of the statute is faithful to our prior holdings calling for a liberal construction that would foster "candid communications between doctor and patient." *Chung,* 548 N.W.2d at 149. The need for nondisclosure of confidential information in this case is paramount in view of Sela's testimony that she continues in therapy with one of the defendants in Jacob's suit and that the litigation has caused her stress in her therapeutic relationship with that defendant.

### IV. Disposition.

Sela is not a party to the litigation either in her individual capacity or as next friend. She is neither under a conservatorship nor a guardianship. There is no other apparent reason why Sela is incapable of waiving her physician-patient privilege. She steadfastly refuses to waive her privilege and disclose her medical records. In these circumstances, we hold the patient-litigant exception does not apply. We conclude the district court correctly denied Roy's motion to expand the protective order in which Roy sought permission to use Sela's medical records in deposing Sela, her therapists, and nontreating experts. We therefore affirm.

**AFFIRMED.**